**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRYSTAL ARCHIE, for herself and on behalf of her minor children, SAVANNAH BROWN, TELIA BROWN, and JHAIMARION JACKSON, | ) ) ) ) ) | No. 19-cv-04838 |
| Plaintiffs, | ) ) | Judge Robert W. Gettleman |
| v. | ) ) | Magistrate Judge Jeffrey Cummings |
| THE CITY OF CHICAGO, *et al*., | ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION**
**TO DEENDANT OFFICERS' MOTION TO DISMISS**

*Plaintiffs' Counsel*
Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite 3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com

May 15, 2020

## <u>**TABLE OF CONTENTS**</u>

Table of Authorities……………………………………………………………………...ii

I.    INTRODUCTION……………………………………………………………... …….....1

II.   RELEVANT PROCEDURAL HISTORY ……………………………………………....1

III.  SUMMARY OF FACTS ALLEGED……………………………………………….......2

IV.   APPLICABLE LEGAL STANDARDS……………………………………………......2

V.    ARGUMENT………………………………………………………………………….3

      A.  Count II States a Claim Against Specified Officers for Unlawful Search Without
          Consent…………………………………………………………………………3

      B.  Count III States a Claim Against Specified Officers for Unlawful Search Based on
          Invalid Search Warrants………………………………………………………..5

      C.  Count IV States a Claim Against Specified Officers for Unlawful Search Based On
          Unreasonable Manner of Entry and Search…………………………………….8

      D.  Counts V and IX State False Arrest and False Imprisonment Claims Against Specified
          Officers under § 1983 and State Law………………………………………….12

      E.  Count VI States a Claim Against Specified Officers for Seizing Specific Personal
          Property of Plaintiffs Without Compensation; Related Count XII States a Claim for
          Conversion…………………………………………………………………….15

      F.  Count VII Constructively States a Claim for State Law Assault Against Defendant
          Officers……………………………………………………………………......18

      G.  Count VIII States a Claim for State Law Battery………………………………..19

      H.  Count X States a Claim for Intentional Infliction of Emotional Distress………………..21

      I.  Plaintiffs Agree to Dismiss Count XI (Trespass) As to Officers Who Entered Plaintiffs
          Apartment During the February Raid………………………………………….22

      J.  Any Dismissal Should be Without Prejudice and With Leave to Re-Plead………......23

VI.   CONCLUSION……………………………………………………………………….23

i

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Ashcroft* v. *Iqbal,* 556 U.S. 667, 678 (2009)……………………………………...……………2

*Atkins v. City of Chicago*, 631 F. 3d 823, 832 (7th Cir. 2011)……………………………………3

*Baker v. Monroe Tp.*, 50 F.3d 1186, 1193 (3d Cir. 1995)…………………………………………13

*Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555 (2007)…………………………………………2

*Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)…………………………………………13

*Black v. Wrigley*, 2017 U.S. Dist. LEXIS 202260, *39 (N.D. Ill. Dec.8 2017)…………………22

*Brooks v. Ross,* 578 F. 3d 574, 580 (7th Cir. 2009)……………......................................................2

*Conley v. Gibson,* 355 U.S. 41, 47 (1957)…………………………………………………………2

*E.E.O.C v. Concentra Health Servs., Inc.,* , 496 F. 3d 773, 776 (7th Cir. 2007)…………………2

*Erickson v. Pardus* 551 U.S. 89, 93 (2007) …………………………………………………..2

*Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)…………………………………………14

*Guzman v. City of Chicago*, 565 F. 3d 393, 398 (7th Cir. 2009)…………………………………13

*Hill v. McIntyre*, 884 F. 2d 271, 277 (6th Cir. 1989)…………………………………….............13

*Graham v. Connor*, 490 U.S. 386, 388 (1989)………………………………………….......14

*Ingram v. City of Columbus*, 185 F. 3d 579, 592 (6th Cir.)………………………………………13

*Jacobs v. City of Chicago,* 215 F.3d 758 (7th Cir. 2000)………………………………...........13

*Lynch v. Young*, 2005 U.S. Dist. LEXIS 7603, *12 (N.D. Ill. March 9, 2005)…………………21

*Marposs Societa Per Axioni v. Jenoptik Auto. N. Am, LLC.*, 262 F. Supp. 3d 611, 618 (N.D. Ill. 2017)…………………………………………………………………………………3

*Maryland v. Garrison*, 480 U.S. 79, 85 (1987)……………………………………………….13

*Mena v. City of Simi Valley,* 226 F. 3d 1031, 1041-1042 (9th Cir. 2000)………………………..13

*Michigan v. Summers,* 452 U.S. 692, 705, n.21 ( 1981)……………………………….............13

*Muehler v. Mena*, 544 U.S. 93, 98 (2005)……………………………………………………….14

*Palmer v. Marion County*, 327 F. 3d 588, 594 (7th Cir. 2003) …………………………………...3

*Southern v. City of Harvey*, 2006 U.S. District. LEXIS 99816, *13-14
   (N.D.Ill. Nov. 13, 2006)……………………………………………………………..21, 22

*Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081, (7th Cir. 2008)…………………………………3

*Zahn v N. Am. Power & Gas, LLC*, 2007 815 F.3d 1082, 1087(7th Cir. 2016)…………………...3

## RULES

Fed. R. Civ. Pro. 12(b)(6)……………………………………………………………1,2

Fed. R. Civ. Pro. 8(a)(2)…………………………………………………………….2

## STATUTES

42 U.S.C. § 1983…………………………………………………………….......................12

Plaintiffs respectfully respond as follows to the defendant officers' ("officers" or "defendants") Fed. R. Civ. Pro. 12(b)(6) motion to dismiss plaintiffs' second amended complaint ("SAC"):

## I.     INTRODUCTION

In this case, it is not and will not be disputed that defendant officers aimed their assault rifles and handguns at close range directly at the heads, faces and bodies of plaintiffs Savannah, Telia and JJ – ages 14, 11 and 7, respectively - when the children posed no threat to officers whatsoever.  (SAC, ¶¶ 4, 6, 11).  These events – and the children's heart-rending cries and terrorized pleas to officers not to shoot them – are captured on defendant officers' body camera videos that the City has already produced in this case.  Key clips showing various officers pointing guns at the children in two separate incidents can be viewed here.

https://chicago.cbslocal.com/2020/02/06/wrong-raid-chicago-police-guns-pointed-at-children/ (last checked May 5, 2020).

In their SAC, plaintiffs have pled facts, far more than required, and have specified which defendant officers engaged in specific misconduct or, at the very least, specifically alleged their personal involvement.  Defendants have simply re-filed their original motion to dismiss directed to plaintiffs' amended complaint, citing all of the same cases, after plaintiffs *cured* the group pleading accusation with the filing of the SAC.  In essence, defendants' current motion boils down to the technical argument that plaintiffs should have specified individual officers' conduct in the counts rather than incorporating those allegations into the counts.

## II.     RELEVANT PROCEDURAL HISTORY

This is defendant officers' second motion to dismiss plaintiffs' complaint.  After plaintiffs voluntarily filed an amended complaint as of right naming the officers who executed

the three search warrants in plaintiffs' apartment, the officers filed a motion to dismiss charging group pleading and a lack of alleged personal involvement. After discussion with the Court and limited discovery, plaintiffs filed their SAC dropping five defendant officers (i.e., Vasquez, Dunn, McClelland, Wallace, and Miller) and specifying the officers who committed specific conduct, thus following the court's instructions and curing defendant officers' main complaint. (Transcript of proceedings, Jan, 8, 2020, at 2-4, attached as Exhibit A).

## III.    SUMMARY OF FACTS ALLEGED

Pressed for space, plaintiffs let their SAC speak for itself, discussing below only those facts most relevant to defendants' arguments for dismissal.

## IV.    APPLICABLE LEGAL STANDARDS

To survive a Fed. R. Civ. Pro. 12(b)(6) motion to dismiss, plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), such that defendant has "fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U. S. 41, 47 (1957)). The federal liberal notice pleading regime "is intended to focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F. 3d 574, 580 (7th Cir. 2009). The factual allegations in plaintiffs' complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc*., 496 F. 3d 773, 776 (7th Cir. 2007)(quoting *Tombly*, 550 U. S. at 555).

However, "[s]pecific facts are not necessary; the [8(A)(2)] statement need only give defendants fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U. S. 89, 93 (2007)(citing *Twombly*, 550 U. S. at 555). A complaint must allege

2

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (quoting *Twombly*, 55) U.S. at 544). To have plausibility, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court reads the complaint and assesses its plausibility as a whole. *Atkins v. City of Chicago*, 631 F. 3d 823, 832 (7th Cir. 2011).

Finally, courts "construe a complaint in the light most favorable to the nonmoving party," *Zahn v. N. Am. Power & Gas, LLC*, 815 F. 3d 1082, 1087 (7th Cir. 2016), and "accept[] as true all well-pleaded facts alleged, and draw[] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1081 (7th Cir. 2008).

## V. ARGUMENT

A simple reading of plaintiffs SAC shows that plaintiffs have not engaged in "group pleading" as defined in the cases defendants cite. Moreover, group pleading is allowed where plaintiffs provide sufficient detail to put defendants on notice of the claims. *Marposs Societa Per Axioni v. Jenoptik Auto. N. Am.*, LLC, 262 F. Supp. 3d 611, 618 (N. D. Ill. 2017). Moreover, the requirement of personal involvement is minimal. While personal involvement in the alleged constitutional deprivation is required, "direct participation is not necessary." *Palmer v. Marion County*, 327 F. 3d 588, 594 (7th Cir. 2003). Defendants' cited cases illustrating dismissals for group pleading and lack of personal involvement simply do not apply to plaintiffs' SAC.

### A. Count II States a Claim Against Specified Officers for Unlawful Search Without Consent

Brought by all plaintiffs, count II states a claim for unlawful search of plaintiffs' apartment without their consent on February, 2019, when officers did not have a search warrant

for their apartment and searched well beyond the areas where the fleeing suspects were found. (SAC, ¶¶ 45, 184). Defendants' sole argument here is that count II is improperly pled against all defendant officers who entered plaintiffs' home because plaintiffs do not specifically allege that officers Westman, De Leon, Guebara, Holden, Anderson or Angel participated in searching their residence. (Defendants' Motion to Dismiss ("motion") at 8). This is inaccurate.

In the fact section of the SAC relating to the February raid (¶¶ 1-54), plaintiffs specifically identify and allege which defendant officers engaged in searching plaintiffs' apartment, including the specific areas each one searched. In ¶ 49, plaintiffs allege:

> …[A]t the direction of Sergeants Brown and Bruno, officers Carranza, Weathersby, Alvarez, Westman, Willingham and others tossed, dumped, and thoroughly searched plaintiffs' entire apartment for approximately 30 minutes. Weathersby and Bruno searched Ms. Archie's bedroom and the kitchen. Alvarez and Bruno searched Savannah's room. On information and belief, Willingham and Weathersby searched JJ's room.

Plaintiffs also allege that defendant sergeant Bruno told Ms. Archie officers "needed to take a look around" because the targets had been found in her apartment. (SAC at ¶ 50). Bruno then instructed plaintiffs to sit in the living room and wait while they "took a look around." (Id.). During officers' ensuing "look around,"

> …[O]fficers Brown, Bruno, Carranza, Weathersby, Alvarez, Westman and Willingham broke a dresser drawer in Telia's room, damaged the cable box, and left a mess in every room in the apartment. Clothes were dumped out and strewn about in every bedroom. They searched through closets, tossed items on dressers and other surfaces onto beds and dumped out bags onto the floor. The truncated body camera footage does not show the extent of the search that was done.

(SAC, ¶ 53). Finally, plaintiffs allege that the police reports for the February raid, prepared by defendant officer Westman, fail to disclose the search that was done of plaintiffs' apartment. (50).

4

Count II specifically incorporates ¶¶ 1-54 – again, all of the alleged facts pertaining to the February raid.  (SAC, ¶ 182).  Count II then states that plaintiffs "assert this claim against all defendant officers who *entered and searched* their apartment on February 8, 2019."  (Id. at ¶ 182)(emphasis added).  (Id.).  Thus, even though count II itself (¶¶ 182-190) does not name specific officers, it expressly incorporates the paragraphs that do.  Thus, count II as a whole is alleged against specifically identified, individual officers (not against a group as such), and each individual officer's personal involvement and conduct is also specifically alleged.  (Id. at ¶¶ 182-190, 1-54).  Therefore, count II states a claim against sergeants Bruno and Brown for directing and participating in the illegal search; against officers Carranza, Weathersby, Alvarez, and Willingham for participating in the illegal search; and against Westman for participating in the illegal search and trying to cover it up by not mentioning it in the incident reports he authored.  Defendants implicitly admit that count II states a claim as to these officers.  (Motion at 8).

Finally, count II also states a claim against officers De Leon, Guebara, Holden, Anderson and Angel.  Plaintiffs specifically allege that each of these officers *entered* plaintiffs' apartment while executing the February 8, 2019 search warrant for the second-floor apartment.  (SAC at ¶ 22).  Plaintiffs also allege, in ¶ 49, that "other" officers besides those named above searched the apartment; logically, this can only refer to one or more of these officers, since they are the only others who entered the apartment.  (Id.).  Finally, plaintiffs allege that all of the officers shut off their body cameras prematurely during the search, such that only the beginning portion of the search is captured on their videos.  (Id. at ¶¶ 41, 53).  Thus, while plaintiffs need discovery in order to identify by name which of these other officers also searched, their personal involvement is clear from the facts pled.  Count II is sufficiently pled against De Leon, Guebara,

Holden, Anderson and Angel because it alleges they were inside plaintiffs' apartment and that some of them searched. If not for turning off their body cameras prematurely, plaintiffs would also know now which of them searched and would have been able to allege such in the SAC.

**B.     Count III States a Claim Against Specified Officers for Unlawful Search Based On Invalid Search Warrants**

Brought by all plaintiffs, count III states a claim for unlawful search based on executing invalid search warrants for plaintiffs' apartment in both April and May, 2019. Defendants' sole argument is that count III is improperly pled against all defendant officers who entered plaintiffs' apartment on these dates because plaintiffs only actually allege that five specific officers were involved in procuring the search warrants, not any of the others who participated in the raids. (Motion at 8). This is wrong.

In the fact sections of the SAC relating to the April and May raids, plaintiffs specifically identify and allege which defendant officers engaged in investigating and procuring those two search warrants. (SAC, ¶¶ 55-97 and ¶¶ 98-153, respectively). For the April raid, plaintiffs allege that defendant Anderson was the affiant who prepared the application for and obtained the search warrant, after failing to independently verify or corroborate in any way the John Doe's statement that the alleged target had a connection with plaintiffs' apartment, which in fact he did not. (Id. at ¶¶ 56-67). Plaintiffs allege that defendant Lt. Willingham gave "rubberstamp" approval to defendant Anderson's application for search warrant without taking any steps to ensure that Anderson had conducted a diligent investigation. (SAC, ¶ 68).

For the May raid, plaintiffs allege that defendant Craig Brown was the affiant who prepared the application for and obtained the May search warrant, after failing to independently verify or corroborate that the alleged target actually entered plaintiffs' apartment, which he had not, or had any connection with their apartment, which he had not. (SAC, ¶¶ 99-106). Plaintiffs

6

allege that defendant Lt. Eichmann gave "rubberstamp" approval to defendant Anderson's application for search warrant without taking any steps to ensure that Anderson had conducted a diligent investigation. (Id. at ¶ 107). Eichmann was also in charge of the May raid. (Id. at ¶ 111). For both the April and May raids, plaintiffs allege defendant officers knew or should have known that the target was not connected with plaintiffs' apartment. (Id. at ¶¶ 67, 68, 106, 108).

Count III specifically incorporates ¶¶ 1-35, 55-97 and ¶¶ 98-153, which are all of the facts alleged pertaining to the May and April raids, including the above allegations against Anderson, Lt. Willingham, Craig Brown and sergeant Eichman. (SAC at ¶ 191). Count III then states that plaintiffs "assert this claim against all defendant officers who *entered and searched* their apartment on April 25 and May 17, 2019." (Id. at ¶ 182)(emphasis added). (Id.). Thus, even though count III itself (¶¶ 191-205) does not name specific officers, it expressly incorporates the paragraphs that do. Thus, count III as a whole is alleged against specified, individual officers (not a group as such), and each individual officer's personal involvement and conduct is specifically alleged. (Id. at ¶¶ 182-190, ¶¶ 1-54). Therefore, count III states a claim against defendant officers Anderson, Lt. Willingham, Craig Brown and Eichman for unreasonably obtaining or approving search warrants for plaintiffs' apartment when they knew or should have known it was the wrong apartment. Defendants implicitly admit that count III states a claim as to these officers. (Motion at 8).

Finally, count III is also directed against officers Boyle, Angel, Ryan, Sanchez, Cusimano, Campbell, Miranda, Bruno and Weathersby, as well as against officers Hammermeister, Cutrone, Weatherspoon, Leveille, Maraffino, Fraction, Jones, Wilke, and Schumpp. Plaintiffs specifically allege that each of these officers entered plaintiffs' apartment and executed the April and May search warrants, respectively. (SAC, ¶¶ 22, 23). Plaintiffs also

allege that some of the officers who executed the February search warrant for the second-floor apartment were the *same* officers who returned to execute a search warrant for plaintiffs' apartment in April (i.e., sergeant Bruno and Angel), even though they did not find anything contraband during their search of plaintiffs' apartment in February. (Id. at ¶¶ 22 and 23, 51, 55, 72). In fact, Bruno was in charge of the April raid and knew the putative factual basis for it (Id. at ¶¶ 72, 96-97); it is a fair inference from these allegations that he understood that the connection between the target and plaintiffs' apartment was tenuous. Similarly, plaintiffs allege that officers Bruno, Sanchez, Angel, Campbell or Ryan interrogated the children with specific questions, questions they would only know to ask if they, too, understood the factual basis for the search warrant. (Id. at ¶ 81). Plaintiffs also specifically allege that "other officers" besides just each affiant were "involved in obtaining or approving the warrant[s]" and also "performed no independent investigation" to verify that the informant provided accurate and current information regarding the target's connection of plaintiffs' apartment. (Id. at ¶¶ 59, 63-64, 67, 69, 104, 105, 106, 108)(e.g., "defendant*s* could have made any of a number of simple inquiries" and "defendant officer*s* reasonably knew… it was highly unlikely that the intended target… could be found in plaintiffs' apartment"). It is well-known that officers are assigned to and work together on teams. It is also common for officers to assist each other in conducting investigations and applying for search warrants, as these activities require significant information-gathering and logistics under time constraints. Therefore, it is a reasonable inference from the facts pled that several of the other officers above who were members of the affiants' search teams assisted the affiants in obtaining the search warrants. Plaintiffs agree they need discovery in order to be able to drill down and identify by name which of these officers assisted the affiants, but the personal involvement of each of these other officers is clear now

from the facts pled. (SAC at ¶¶ 23, 24). Therefore, defendants' motion to dismiss count III should be denied as to all of the defendant officers named above.

### C. Count IV States a Claim Against Specified Officers for Unlawful Search Based On Unreasonable Manner of Entry and Search

Brought by plaintiff Krystal Archie, count IV states a claim for unlawful search based on defendant officers' unreasonable manner of entry and search during the execution of all three search warrants in February, April and May, 2019. In particular, plaintiff alleges defendant officers unreasonably destroyed her property during each raid and, during the third raid, failed to knock and announce, pointed guns at her, handcuffed her unnecessarily for an unreasonably long time, and verbally abused her. (SAC, ¶ 208). She also alleges that officers continued to search even after they knew that there was no connection between her apartment and the alleged target. (Id. at ¶¶ 116-117). Defendants' sole argument is that count IV is improperly pled against all of the defendant officers who entered plaintiffs' apartment across the three raids because, they say, plaintiff only specifically names four officers who took these specific actions – defendants Craig Brown, Weatherspoon, Fraction and Jones. (Motion at 8-9). This is simply inaccurate.

First, while defendants focus on allegations against the officers in the May raid alone, ¶ 206 of count IV specifically incorporates paragraphs ¶¶ 1-153, which contain all factual allegations pertaining to *all three raids*. (Motion at 9).

Second, defendants implicitly and correctly admit that count IV sufficiently alleges that Brown, Weatherspoon, Fraction and Jones engaged in the misconduct against her that is alleged for the May raid. (Motion at 8-9). In particular, plaintiffs allege that Brown and Weatherspoon entered first and pointed pistols at plaintiff in the hallway. (SAC at ¶ 111). Plaintiffs also allege on information only that defendant Fraction or Jones handcuffed plaintiff after Fraction patted her down. (Id. at ¶ 113).

Third, despite defendants' suggestion to the contrary, plaintiff *does* plead in count IV that specified, individual officers who participated in the May raid engaged in the unreasonable conduct against her that is alleged in ¶ 208. (Motion at 9). In particular, plaintiffs allege that *none* of the officers who participated in the May raid - Brown, Hammermeister, Cutrone Weatherspoon, Wilke, Leveille, Schumpp, Maraffino, Fraction, Jones, and Eichman – "knocked or announced" their office before breaking plaintiffs' back door and entering. (SAC, ¶¶ 24, 110). To be sure, *each* individual officer had an independent duty to "knock and announce." Moreover, plaintiff alleges several, specific, abusive statements directed at her by the officers who entered her apartment. (Id. at ¶¶ 112, 114, 118-119). She specifically identifies defendants Leveille, Brown and Weatherspoon as the authors of at least some of the abusive statements. (Id. at ¶¶ 118-120). Contrary to defendants' argument that plaintiffs do not allege that any defendants destroyed her property during the May raid, plaintiff does allege that defendants Brown, Hammermeister, Cutrone Weatherspoon, Wilke, Leveille, Schumpp, Maraffino, Fraction, Jones, and Eichman were the ones who "*breached* and entered plaintiffs' apartment," which logically suggests forcible entry and damage. (Motion at 9)(SAC at ¶¶ 24, 111)(emphasis added). Additionally, plaintiff also alleges that officers broke open her back doors and simply left them wide open and did not tell her how to get them repaired. (SAC at ¶¶ 110, 126). Further, plaintiff alleges that Brown, Hammermeister, Cutrone, Weatherspoon, Schumpp, Wilke, Leveille, Maraffino, Fraction, Jones and Eichman searched her apartment; Cutrone, Hammermeister and Maraffino searched the living room, while the others searched throughout the rest of the apartment (¶ 121), so it is a reasonable inference that any damage inside plaintiff's apartment was caused by one or more of these officers. Finally, plaintiffs explain that *none* of the officers who participated in executing the May search warrant were

10

wearing body cameras. (SAC at ¶ 110). Thus, beyond the specifics plaintiff alleges above, she does need discovery to further narrow down and name, from among those handful who entered, any additional officers who committed known misconduct during the third raid, but the personal involvement of each of the officers who entered her apartment is clear now from the facts pled. Plus, plaintiff has already more than sufficiently alleged which individual officers engaged in specified misconduct. Therefore, defendants' motion to dismiss count IV should be denied as to all of the defendant officers named above.

Fourth, defendants implicitly and correctly admit that count IV expressly covers the alleged misconduct committed against plaintiff Krystal Archie during all three raids (February, April and May). (Motion at 9). In connection with the February raid, plaintiff alleges that defendant officers confiscated and did not her return her legally-owned handgun even after she presented her driver's license and a current FOID card, which officers confirmed was valid on the spot with the aid of the CPD dispatcher. (SAC, ¶¶ 47-48). Next, as already detailed above in section A, in connection with the February raid plaintiff alleges that officers Cornelius Brown, Bruno, Carranza, Weathersby, Alvarez, Westman, Willingham "and others" who participated in the raid (namely, De Leon, Guebara, Holden, Anderson and Angel) searched in specified rooms and caused damage to specified possessions of hers, including her front door, a dresser drawer, and a cable box. (Id. at ¶¶ 49-51, 53).

Finally, in connection with the April raid, plaintiff alleges that no defendant officer – specifically including Sanchez, Angel, Anderson, Miranda, Cusimano, Campbell, Ryan, McClelland or Weathersby - knocked and announced prior to forcibly entering her apartment and causing damage. (SAC, ¶¶ 72-73). She also alleges that specified defendant officers who entered her apartment and searched – including Anderson, Boyle, Angel, Ryan, Sanchez,

Cusimano, Campbell, Miranda, Weathersby and Bruno - continued to remain in the apartment and search even after they knew the target was not present in the apartment and had no connection with it. (Id. at ¶¶ 82, 88). Further, despite the fact that all defendant officers prematurely turned off their body worn cameras after the initial entry and before they started searching the apartment, making it difficult for plaintiffs to remember and identify them, plaintiff Krystal Archie nevertheless alleges in detail which officers caused specified damage to her personal property. (Id. at ¶¶ 76, 81, 86, 87). In particular, she alleges that Anderson, Boyle, Angel, Ryan, Sanchez, Cusimano, Campbell, Miranda, Weathersby and Bruno needlessly dumped her papers, receipts, keepsakes and other important items. (Id. at ¶ 90). She alleges that these same officers dumped out 15-20 bottles of her cooking spices and took meats out of the freezer and left them out, and dumped out her baking powder out in the kitchen; these items were critical to plaintiff's small, food preparation business, which was inoperable for weeks as a result of these defendant officers' actions. (Id.). These same defendant officers also damaged plaintiffs front and back doors, broker a dresser, broke light switch plates, dumped out plaintiff's toolkits, causing several tools to become lost, and generally dumped and threw plaintiffs' clothes, furniture, and other belongings throughout the apartment. (Id. at ¶¶ 91-93). Beyond this, plaintiffs do need discovery but not through any fault of their own bnut because all defendants turned off their body cameras just a few minutes into the April raid, in violation of CPD policy.

Nevertheless, given these particularized allegations against specified officers in each of the three raids, it is clear plaintiff has sufficiently alleged that the above-named defendant officers were personally involved in harming plaintiff Krystal Archie in several ways.

Thus, no defendant officer who entered plaintiffs' apartment in any raid should be dismissed from count IV at this time. Defendants' motion to dismiss this count should be denied in *toto*.

### D. Counts V and IX State False Arrest and False Imprisonment Claims Against Specified Officers under §1983 and State Law

In counts V and IX, plaintiff Krystal Archie states false arrest and false imprisonment claims under §1983 and state law, respectively. (SAC, ¶¶ 215-226, 247-254). In these counts, plaintiff alleges that specified defendant officers, without a warrant, probable cause or any reasonable security concern, handcuffed and confined Ms. Archie to her living room for an unreasonably long period of 60 minutes. (Id. at ¶¶ 216-218, 248). Both counts V and IX expressly incorporate paragraphs ¶¶ 1-26 and ¶¶ 98 – 153, which constitute the factual allegations pertaining to the May raid. (Id. at ¶¶ 206, 247).

Defendants argue that both counts should be dismissed as a matter of law because, they say, a 60-minute handcuffed detention incident to search warrant execution is *per se* reasonable. (Motion at 10-13). But it is only reasonable with reference to the circumstances. *Jacobs v. City of Chicago*, 215 F. 3d 758 (7th Cir. 2000). First, if, as plaintiffs allege, defendants executed a search warrant for an apartment with which they knew the target did not have any connection, i.e., if the search warrant was invalid because it lacked probable cause, then any detention incident to the search lacked lawful authority and was a violation of plaintiff's Fourth Amendment rights. *Maryland v. Garrison*, 480 U. S. 79, 85 (1987); *Mena v. City of Simi Valley*, 226 F. 3d 1031, 1041-1042 (9th Cir. 2000)(officers unreasonably detained resident in handcuffs); *Binay v. Bettendorf*, 601 F. 3d 640, 650 (6th Cir. 2010)(whether officers unreasonably pointed guns at and handcuffed plaintiffs during detention is a jury question); *Hill v. McIntyre*, 884 F. 2d 271, 277 (6th Cir. 1989). Similarly, if officers learn that the information on which probable cause was based was mistaken, then they were obliged to terminate their search immediately (and

release their detainees). *Guzman v. City of Chicago*, 565 F. 3d 393, 398 (7th Cir. 2009). Moreover, while detention incident to search may be warranted while a "proper search" is conducted, a prolonged detention may not be. *Michigan v. Summers*, 452 U. S. 692, 705, n. 21 (1981). Further, the use of handcuffs to detain someone during a search can be unwarranted. *Ingram v. City of Columbus*, 185 F. 3d 579, 592 (6th Cir. 1999)(handcuffing, at gunpoint, occupants of house police entered in pursuit of alleged drug dealer was not justified where police had no reason to fear for their personal safety); *Baker v. Monroe Tp*., 50 F. 3d 1186, 1193 (3d Cir. 1995)(unreasonable to employ guns and handcuffs to restrain cooperative persons). If warranted, the duration of the use of the handcuffs must be objectively reasonable under the circumstances. *Muehler v. Mena*, 544 U. S. 93, 98 (2005); *Graham v. Connor*, 490 U. S. 386, 388 (1989). Further, a detention may be unreasonable in a particular instance either because the detention itself is improper or because it is carried out in an unreasonable manner. *Franklin v. Foxworth*, 31 F. 3d 873, 876 (9th Cir. 1994). It may unreasonable if it is unnecessarily degrading. Id.

In this case, plaintiffs have alleged more than enough facts to make it plausible that Ms. Archie's handcuffed detention was unreasonable under the circumstances. Plaintiffs allege that defendants knew that the May search warrant was invalid. (SAC, ¶¶ 98-109, especially ¶ 108). Plaintiffs also allege defendants realized within minutes of entering that there was no sign of any connection to the target but continued to search. (Id. at ¶¶ 116-117). Moreover, plaintiffs allege officers did not suspect Ms. Archie of committing a crime, she posed no threat, and she did not resist arrest or attempt to flee. (Id. at ¶¶ 8, 11, 124, 127-129); *Graham* at 396. Defendants even told her *she was not who they were looking for*. (Id.). Further, plaintiffs not only allege that officers handcuffed Ms. Archie for an hour, but that they did so as

14

one in a combination of humiliating, demeaning and degrading acts – breaking her doors, pointing guns at her, abusively screaming and cursing at her, making her the object of cruel jokes, searching her entire apartment, throwing around and shattering her belongings, and not apologizing for anything they did or said - that left her feeling personally violated and in despair. (SAC, ¶¶ 111-121, 126).  Finally, whether handcuffing Ms. Archie was reasonable under the circumstances is a fact question that it is not proper for defendants to argue or the Court to decide on a motion to dismiss.  (Indeed, the cases defendants cite were *not* decided on motions to dismiss.  (Motion at 13-15)).  For the same reason – because the facts and the pecise constitutional issue have not been fleshed out in discovery and are not yet clear – the Court should deny defendants' request for qualified immunity.  (Motion at 15).

Last, officers argue that, if Count IX is not dismissed, then it should at least be dismissed as to all defendants except officers Fraction and Jones because plaintiff alleges - on information and in the alternative - that one of them handcuffed her.  (Motion at 10; SAC ¶ 113).  However and first, as previously noted no officers wore body cameras during the May raid. (SAC, ¶ 110).  Second, plaintiff also identifies all of the officers who breached and entered her apartment and alleges, on information and belief, that defendants C. Brown and Weatherspoon reached the front of the apartment – where Ms. Archie was located - first.  (Id. at ¶ 111).  Given their personal involvement and the fact that it is plausible, based on their proximity, that another officer could have handcuffed plaintiff, none of the officers who entered her apartment in May – Craig Brown, Hammermeister, Cutrone, Weatherspoon, Wilke, Leveille, Schumpp, Maraffino, Fraction, Jones, and Eichman - should be dismissed at this time.  (Id.).

E.    **Count VI States a Claim Against Specified Officers for Seizing Specific Personal Property of Plaintiff's Without Compensation; Related Count XII States a Claim for Conversion**

Brought by all plaintiffs, count VI states a claim for unconstitutional seizure of property during the execution of all three search warrants in February, April and May, 2019. (SAC, ¶¶ 227-232).  In this count, plaintiffs allege that defendant officers damaged, destroyed or confiscated and did not return plaintiffs' property.  (Id. at ¶ 228).  In related count XII for conversion, plaintiffs similarly allege that defendant officers converted plaintiffs' personal property during the course of all three searches.  (Id. at ¶¶ 270-275).  Both counts VI and XII expressly incorporate paragraphs ¶¶ 1 – 153, which constitute all of the factual allegations pertaining to defendants' conduct during all three search warrant executions.  (¶¶ 227, 270).

Defendants' sole argument is that count VI is improperly pled against "all defendant officers [who] entered and searched plaintiffs' residence" because, they say, plaintiffs have not specifically alleged 1) that officers Westman, De Leon, Guebara, Holden, Anderson, or Angel searched, seized or damaged property on February 8; or 2) that any defendant officers searched, seized or damaged property on May 17.  (Motion at 9).  Therefore, they ask for dismissal from this count of defendants Westman, De Leon, Guebara, Holden, Anderson, Angel, Cornelius Brown, Hammermeister, Cutrone, Weatherspoon, Leveille, Maraffino, Fraction, Jones, Wilke, Schumpp, and Eichman.  (Id.).  Defendants appear, by conspicuous omission, to admit that plaintiffs have sufficiently alleged that specific defendant officers searched, seized or damaged property during the April raid.  (Id.).

Defendants have inaccurately stated plaintiffs' particularized allegations again. First, plaintiffs *do* expressly allege that *Westman*, *Cornelius Brown and Willingham* searched and damaged plaintiffs' property on February 8.  As demonstrated in Section A above, plaintiffs specifically allege that defendants Cornelius Brown, Bruno, Carranza, Weathersby, Alvarez, Westman, and Willingham both searched and damaged plaintiffs' property and that Westman did

not disclose this search. (see *supra*; see also SAC, ¶¶ 49, 50, 53). Thus, the Court should not dismiss Westman, Brown and Willingham, nor any of the officers who plaintiffs specifically allege (based on officers' body camera videos) entered their apartment and searched (i.e., De Leon, Guebara, Holden, Anderson and Angel) before all defendant officers prematurely cut their body cameras while the search was still ongoing.

Second, plaintiffs *do* indeed specifically allege that specified defendant officers seized, damaged and/or destroyed plaintiffs' property during the May raid. As demonstrated in section C above, plaintiffs allege that defendants Craig Brown, Hammermeister, Cutrone Weatherspoon, Wilke, Leveille, Schumpp, Maraffino, Fraction, Jones, and Eichman 1) "*breached* and entered plaintiffs' apartment," 2) broke open plaintiffs' back doors and simply left them wide open and did not advise how to get them repaired 3) searched her apartment (with Cutrone, Hammermeister and Maraffino searching the living room and the others searching in the rest of the rooms), so any damage inside plaintiff's apartment was caused by one or more of these officers. (See *supra*; see also SAC, ¶¶ 24, 110, 111, 121, 126). Plaintiffs also explained that *none* of the officers who participated in executing the May search warrant were wearing body cameras, thus making it difficult for plaintiffs to identify additional specifics without discovery. (see *supra*; see also SAC, ¶ 110). But the personal involvement of each of these officers in searching and damaging plaintiffs' property is sufficiently clear now from the facts pled. Therefore, defendants Hammermeister, Cutrone, Weartherspoon, Leveille, Marafinno, Fraction, Jones, Wilke Schumpp and Eichman should not be dismissed at this time.

Finally, to be clear, as also demonstrated in section C above, plaintiffs also allege that specified defendant officers seized, damaged and destroyed plaintiffs' personal property while executing the April search warrant in plaintiffs' apartment, including defendants *Anderson*

17

and *Angel*. In summary, plaintiffs allege that defendants Anderson, Boyle, Angel, Ryan, Sanchez, Cusimano, Campbell, Miranda, Weathersby and Bruno 1) dumped her papers, receipts, keepsakes and other important items; 2) dumped out 15-20 bottles of her cooking spices, dumped out baking powder, and took meats out of the freezer and left them out, which actions rendered plaintiffs business inoperable; 3) damaged plaintiffs front and back doors, broke a dresser, broke light switch plates, dumped out plaintiff's toolkits, causing several tools to become lost, and generally dumped and threw plaintiffs' clothes, furniture, and other belongings throughout the apartment. (SAC, ¶¶ 90-93). Finally, as with the May raid, plaintiffs have explained and alleged that defendant officers prematurely turned off their body worn cameras minutes after their entry and before they began searching the apartment, thus making it difficult for plaintiffs to identify each instance of damage caused by each individual officer; nevertheless, plaintiffs do allege in detail that specified officers caused specified damage to their personal property, which is more than sufficient for personal involvement. (See *supra*; see also SAC, ¶¶ 76, 81, 86, 87). Thus, the Court should not dismiss defendants Anderson, Angel or any of the others named above at this time. Therefore, defendants' motion to dismiss counts VI and XII should be denied as to all of the defendant officers named above.

> **F.    Count VII Constructively States a Claim for State Law Assault Against Defendant Officers**

In Count VII, all plaintiffs allege that defendant officers assaulted them under state law when specified defendants pointed their assault rifles and pistols at them during each of the three raids. (¶¶ SAC, 233-239). ¶ 233 of count VII incorporates ¶¶ 1 – 153, which set forth the factual allegations pertaining to all three raids. (Id.). In particular, the minor plaintiffs allege in detail that, during the February raid, officers Holden, Guebara, De Leon, and/or Anderson pointed their assault rifles at close range directly at minor plaintiffs Telia, Savannah and

18

Jhaimarion when there was no threat whatsoever.  (Id. at ¶¶ 11, 43-44).  They also allege that additional officers entered the apartment and were nearby.  (Id. at ¶ 42).  The minor plaintiffs allege that, during the April raid, officers Anderson, Campbell or Ryan, Cusimano, Boyle, and Sanchez, Miranda or Angel pointed their assault rifles and pistols at close range directly at all three minor plaintiffs while they lay face down on the floor.  (Id. at ¶¶ 75, 78-80).  They also allege that additional officers entered the apartment and were nearby.  (Id. at ¶ 72).  And plaintiff Archie alleges that, during the May raid, defendant Craig Brown or Weatherspoon pointed their pistols at her in the hallway when she did not pose any threat.  (Id. at ¶¶ 11, 111).  She also alleges that additional officers entered her apartment and were close by.  (Id. at ¶¶ 111-113).

However, plaintiffs inadvertently – due to a scrivener's error - failed to allege in the first paragraph of this count that plaintiffs "assert this claim against defendant officers." (SAC, ¶ 233).  Plaintiffs allege every other state law and 1983 count (except for the *Monell*, *respondeat superior* and indemnification counts) against defendant officers.  (Id. at ¶¶ 182, 191, 206, 215, 227, 240, 247, 255, 264 and 270 ).  Further, the allegations within count VII are against defendant officers for their conduct, making it clear this omission was inadvertent.  (Id. at ¶¶ 234-239).  Understandably, defendant officers did not move to dismiss this count.  (Motion at 10-11).  However, because it is clear that plaintiffs intended to plead this count against defendant officers, plaintiffs respectfully request that the Court construe this count as constructively pled against at least those specified defendant officers whom plaintiffs allege pointed their firearms at them; in the alternative, plaintiffs seek leave to re-plead this count as to the defendant officers who entered plaintiffs' apartment, including those alleged to have pointed guns at them.

### G.    Count VIII States a Claim for State Law Battery

Brought by plaintiff Krystal Archie and minor plaintiff Savannah Brown, count VIII states a claim against specified officers for specified conduct constituting state law battery. (SAC, ¶¶ 240-246). In count VIII, plaintiffs allege that the "defendant officers identified above" caused unjustified physical contact with plaintiffs when, in April, an officer put a foot on minor Plaintiff Savannah Brown's back while pointing an assault rifle at her and grabbed her wrist to handcuff her and when, in May, an officer unnecessarily handcuffed Ms. Archie for an hour. (Id. at ¶ 241). ¶ 240 of this count specifically incorporates paragraphs ¶¶ 1 – 153 of the SAC, which includes all of the alleged facts pertaining to the April and May raids. (Id.). In the fact section for the May raid, plaintiff alleges that "officers handcuffed" her and that, on information and belief, the officer who handcuffed her was defendant Fraction or defendant Jones. (Id. at ¶ 113). She also identifies all of the officers who breached and entered her apartment and alleges, on information and belief, that defendants C. Brown and Weatherspoon reached the front of the apartment – where Ms. Archie was located - first. (Id. at ¶ 111).

In the fact section for the April raid, plaintiffs specifically allege that, on April 25, defendant officers Anderson, Campbell or Ryan pointed his assault rifle at Savannah (as they approached the doorway to her room where she was) and that, moments later after she got face-down on the floor, officer Sanchez, Miranda or Angel

> put his foot on top of the middle of her back and pointed his long, assault rifle at the back of her head and at her face at point-blank range. The officer then started handcuffing her and stopped only when she protested that she was only 14 years-old.

(SAC, ¶¶ 77-79). Plaintiffs also specifically identify all of the officers who, moments before guns were pointed at Savannah, breached and entered the apartment, including those believed to have entered first (and headed toward Savannah). (Id. at ¶¶ 72-73).

Defendants' only argument is that all defendant officers, except those specifically named as engaging in physical contact with plaintiffs, should be dismissed at this time. (Motion at 10). However and first, as previously noted no officers wore body cameras during the May raid. (SAC, ¶ 110). Given their personal involvement and the fact that it is plausible, based on their proximity, that another one of them could have handcuffed her, none of the officers who entered plaintiffs' apartment in May – Craig Brown, Hammermeister, Cutrone, Weatherspoon, Wilke, Leveille, Schumpp, Maraffino, Fraction, Jones, and Eichman - should be dismissed at this time. (Id.).

Similarly, because plaintiffs have identified all of the officers who, moments before guns were pointed at Savannah, breached and entered the apartment in April, the personal involvement of no officer is in doubt. While plaintiffs have alleged on information and belief and in the alternative the officer whom they think placed his foot on Savannah's back while pointing his gun at her, given the circumstances of the raid this could plausibly have been another officer who entered. Therefore, no defendant who breached and entered plaintiffs' apartment in April should be dismissed from count VIII at this time.

## H. Count X States a Claim for Intentional Infliction of Emotional Distress

Brought by all plaintiffs, count X states a claim against defendant officers for intentional infliction of emotional distress ("IIED") for pointing guns at plaintiffs and other conduct during the February, April and May raids. (SAC, ¶¶ 255-263). Plaintiffs have alleged all the elements of the claim and facts for each element, including that defendants caused plaintiffs not once but *three separate times* to suffer severe, long-term emotional distress and trauma, including PTSD, that affects their days and nights and their functionality. (SAC, ¶¶ 131-144, 151-153). Defendants do not argue otherwise. Rather, defendants' sole argument is that

defendant officers' alleged conduct is not sufficiently extreme and outrageous to be actionable as IIED.  (Motion at 13-15).

Defendants are wrong as a matter of law.  It is well-established that the extreme and outrageous character of conduct can derive from the abuse of an official position of power. *Southern v. City of Harvey*, 2006 U. S. Dist. LEXIS 99816, *13-14 (N. D. Ill. Nov. 13, 2006)(denying motion to dismiss IIED claim against police officers)(Gettleman, J); *Lynch v. Young*, 2005 U. S. Dist. LEXIS 7603, *12 (N. D. Ill. March 9, 2005)(Gettleman, J.)(denying motion to dismiss IIED claim as to law enforcement officers).  A police officer is the type of individual who can become liable through the abusive exercise of his authority.  Id.  Put differently, the degree of authority or power that a defendant has over a plaintiff can determine whether that defendant's conduct is outrageous; the more control a defendant has over a plaintiff, the more likely the defendant's conduct is outrageous, especially when the defendant makes a threat that he has the power to carry out (such as a police officer's threat of shooting someone by pointing an assault rifle at them).  Comments to § 46 of the Restatement (Second) of Torts (mentioning police officers).  Finally, defendants' indisputable awareness that the plaintiffs, who were young children, were especially vulnerable and susceptible to emotional distress can also make defendants' conduct extreme and outrageous.  *Black v. Wrigley*, 2017 U. S. Dist. LEXIS 202260, *39 (N. D. Ill. Dec. 8, 2017).

In this case, plaintiffs allege the police abused their trusted authority when on two different occasions they trained their guns on the same helpless young children who posed no threat and who officers knew were especially vulnerable and fragile, severely traumatizing them. (SAC, ¶¶ 11, 258).  Defendants did far more than "brandish their weapons," which is an improperly argumentative mischaracertization of the facts alleged.   (Motion at 14).  On two

22

different occasions, they aimed assault rifles and pistols at close range directly at the heads and faces of young children as they lay on the floor, compounding the harm they caused the first time they terrorized them in this manner. (SAC, ¶¶ 43-44, 75, 78-80). Plaintiffs expressly allege that officers knew plaintiffs were vulnerable and that they abused their power anyway. (SAC, ¶¶ 188-190, 203-205, 212-214, especially 258).

In *Southern v. City of Harvey*, this Court rejected the same argument defendants make here, holding that the claim that the alleged conduct was insufficiently extreme and outrageous was "premature" at the pleading stage where all plaintiff is required to do under liberal notice pleading is to put defendants on notice of the nature of the claim. Id. at *14. Plaintiffs have done that here, and the Court should rule the same way.

Last, plaintiffs agree that, as a matter of law, they cannot state a claim for negligent infliction of emotional distress, and, thus, they agree to dismiss that portion of count X.

## I.   Plaintiffs Agree to Dismiss Count XI (Trespass) As to Officers Who Entered Plaintiffs' Apartment During the February Raid

Plaintiffs agree that Count XI, as drafted, only applies to the April and May search warrant executions; therefore, plaintiffs agree to dismiss this count as to officers who entered plaintiffs' apartment during the February raid.

## J.   Any Dismissal Should be Without Prejudice and With Leave to Re-plead

The defendant officers' motion does not request that any defendant officers be dismissed with prejudice. (Motion at 16). In the event the Court decides that plaintiffs have not sufficiently pled any claim(s) against any particular defendant officer(s), dismissal(s) should be dismissed without prejudice to plaintiffs' ability to re-join the officer(s) during or after discovery.

## VI.   CONCLUSION

For at least the reasons set forth above, defendant's motion to dismiss should be denied in full. In the event the Court grants any part of defendant's motion, plaintiffs respectfully request leave to re-plead.

Respectfully submitted,


s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
THE LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com


## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld, Jr., an attorney for plaintiffs, hereby certify that on May 15, 2020, filing and service of the foregoing ***Plaintiffs' Amended Response in Opposition to Defendant Officers' Motion to Dismiss*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 and the Federal Rules of Civil Procedure as to service on any party who is not a Filing User or represented by a Filing User.

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Al Hofeld, Jr.
THE LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com

24