IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| KRYSTAL ARCHIE, for herself and on behalf of her minor children, SAVANNAH BROWN, TELIA BROWN, and JHAIMARION JACKSON, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF CHICAGO, *et al*., <br><br> Defendants. | Case No. 19 C 4838 <br><br> Judge Gettleman <br><br> Magistrate Judge Cummings |

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION TO REASSIGN RELATED CASES**

*Counsel for Plaintiffs*
Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite 3120
Chicago, IL 60602
(773) 241-5844
(312) 372-1766 (FAX)
al@alhofeldlaw.com

March 17, 2021

Plaintiffs, through counsel, respectfully reply as follows to defendants' opposition to reassign cases under Local Rule 40.4:

**I.     INTRODUCTION**

Plaintiffs' motion requests that the four related cases, *Blassingame, Harbin, Lyons,* and *Vale*, be reassigned to Judge Gettleman, who has the lowest-numbered case, *Archie*. In addition, plaintiffs now respectfully move this Court to have *Smith v. City of Chicago, et al.*, 21-cv-890 (N. D. Ill.), reassigned to this Court as well. *Smith* was filed February 27, 2021 and is also related to *Archie*, *Blassingame, Harbin, Lyons,* and *Vale*. A copy of the *Smith* complaint is attached hereto as Exhibit N. The same attorneys represent the parties in *Smith*.

*Archie*, *Blassingame, Harbin, Lyons, Vale, and Smith* are so similar that they are practically siblings, if not twins. Defendants vastly overstate the factual differences of each search warrant incident, but their detailed recitation of each case's facts shows that the cases have the same legal issues and many of the same factual ones. (Response at 3-5, 7-14). Each case involves a similar fact pattern: an officer gets information from an unreliable informant, fails to verify that information, and then obtains and executes a search warrant on the residence of an innocent family of color (no plaintiff, arrested, charged or even connected to the target); during the execution of the warrant, officers break into the family's home without knocking or announcing and point guns directly at the family, including young children, verbally demean the family, search the home, and damage or destroy the family's personal property. Chicago Department Superintendent David Brown recently acknowledged CPD's pattern of executing search warrants based on uncorroborated tips from informants, an allegation throughout all six cases: "Over the years we have … become too reliant on informants without third party or evidentiary corroboration.… CPD policy should require [corroboration] for all search warrants

1

prior to [their] service without exception. *Mayor Lightfoot Calls on Retired Judge to Investigate Anjanette Young Case*, CBS Chicago (Dec. 22, 2020), https://chicago.cbslocal.com/video/5133941-mayor-lightfoot-calls-on-retired-judge-to-investigate-anjanette-young-case/.

The central claim against the City of Chicago is identical across six cases. In each, the minor plaintiffs alone bring a *Monell* claim based on excessive force against them and the City's pattern of executing warrants in the wrong homes based on bad information. Each of these *Monell* claims is founded on five allegations:

1. Chicago has a *de facto* policy of using excessive force on children;
2. Chicago has gaps in policies and training regarding the use of force on children, including the pointing of firearms;
3. Chicago fails to investigate and discipline officers who use excessive force on children;
4. Chicago has a *de facto* policy of applying for search warrants based on unreliable and unverified information from John Doe informants for officers are never investigated, disciplined or re-trained; and
5. A code of silence pervades Chicago's police accountability system.

(Ex. A, ¶¶ 154-81; Ex. B-E).

The various plaintiffs' claims against the defendant officers also share many commonalities. Of the 39 claims brought against the officers, 37 are the same causes of action. While it is true that some complaints allege one or two causes of actions that the others do not - for example, *Archie* is the only complaint to allege battery - these cases share most of their DNA. They may not be twins, but they *are* siblings. It therefore makes sense that they should each be overseen by the same judge.

The defendants begin their brief by asserting that plaintiffs seek not only to have the four (now 5) cases reassigned but also consolidated for all purposes. (Defendants' Brief at 1). This is not true, and defendants seem not to understand the difference. Plaintiffs have not moved to consolidate these cases for all purposes but merely to them reassigned to this Court. While it is

2

true that all cases must be *capable* of being disposed of in a single proceeding, as set forth below the case law is clear that the cases need not actually be disposed of in the same proceeding.

## II.  ADDITIONAL LEGAL STANDARD

The primary concern on a motion to reassign is judicial efficiency. *Global Patent Holdings, L.L.C. v. Green Bay Packers, Inc.*, No. 00 C 4623, 2008 U.S. Dist. LEXIS 33296, at *13 (N.D. Ill. April 23, 2008).

## III.  ARGUMENT

### A.  The Cases Are Related Because They Share The Same Issues of Fact and Law

The *Blassingame, Harbin, Lyons, Vale* and *Smith* cases are related to *Archie* because they share many of the same issues of fact and law. LR. 40.4(a)(2). Each involves an instance where police officers used uncorroborated information from an informant to obtain a search warrant. (Ex. A-E, N).  Next, when executing these warrants, officers failed to knock and announce, and held families of color at gunpoint—including children—while searching the families' homes, verbally demeaning them, and damaging or destroying their personal property. (Id.).  Each case revolves around the *same Monell* claim by the child plaintiffs, i.e., that Chicago police have a custom of using excessive force against children that was the moving force behind officers pointing of guns at the children and traumatizing them.  (Ex. A, ¶¶ 154-181; Ex. B-E, N).  Race is an allegation and an issue in every complaint. (Ex. A-E, N).

There is also substantial similarity and overlap among the claims against the officers in all six cases. In total, there are 11 types of claims brought against the officers in these cases. First, there are five federal claims brought under § 1983:

1. Unlawful search, invalid warrant;
2. Unlawful search, unreasonable manner of entry and search;
3. Unlawful search, search without consent;

3

4. False arrest and imprisonment; and
5. Unconstitutional seizure of property.

Second, there are six additional claims brought under state law:

1. Assault;
2. Battery;
3. False arrest and imprisonment;
4. Intentional infliction of emotional distress (IIED);
5. Trespass; and
6. Conversion.

As noted earlier, the six cases share almost all of these claims in common. They share more than "some" of the same legal issues: they share most of them. Table 1 below illustrates this.[1]

| Claims in Each Case | *Archie* | *Blassingame* | *Harbin* | *Lyons* | *Vale* |
|---|---|---|---|---|---|
| *Monell:* Excessive Force | X | X | X | X | X |
| *Respondeat Superior* | X | X | X | X | X |
| Indemnification | X | X | X | X | X |
| Invalid Warrant | X | X | X | X | X |
| Unreasonable entry & search | X | | X | X | X |
| Search without consent | X | | | | |
| False arrest & imprisonment | X | X | X | | X |
| Unconstitutional seizure of property | X | X | X | X | |
| Assault | X | X | X | X | X |
| Battery | X | | | | |
| False arrest & imprisonment (state) | X | X | X | | X |
| IIED | X | X | X | X | X |
| Trespass | X | X | X | X | |
| Conversion | X | X | | | |

**Table 1**

(Ex. A-E).

Therefore, this Court should find that the cases are related under Local Rule 40.4(a)(3).

---

[1] Plaintiffs did not have time to add the *Smith* claims to the table, but it follows the mould: *Monell* excessive force, unlawful search-invalid warrant, false arrest/false imprisonment (§1983), assault, false arrest/false imprisonment (state law), intentional infliction of emotional distress, destruction of personal property (state law), *respondeat superior*, and indemnification.

4

B.   **The Cases All Meet the First Three Requirements of Local Rule 40.4(b)**

Defendants do not contest that first requirement, that each case be pending in the same court, is met here. LR 40.4(b)(1). The second requirement, that reassignment be likely to result in substantial savings of judicial time and effort, is also satisfied here. LR 40.4(b)(2). As Table 1 illustrates, the causes of action in each of the complaints largely mirror each other. Analysis of motions and discovery issues under these complaints by different judges would require "considerable duplicative effort." *Sha-Poppin*, 2020 U.S. Dist. LEXIS 249428, at *9 (N.D. Ill. Sept. 4, 2020); *see Anderson v. Cornejo*, 199 F.R.D. 228, 263 (N.D. Ill. 2000). By reassigning these five cases to join *Archie*, the District Court would save considerable time and effort. First, as discussed in the motion, the *Monell* claim is identical in each case. By assigning these cases to one judge, this Court will only have to rule on all *Monell* issues (in motions to dismiss, motions to bifurcate, discovery motions and summary judgment) once as opposed to six times. The same is true for the *respondeat superior* and indemnification claims against the City, as well as most of the claims against the defendant officers. Even if there were substantial factual differences between the cases, reassigning the cases to one judge would prevent duplicative legal research and writing: instead of researching and writing about assault and IIED six times, for example, this Court would only have to do so once.

The defendants argue that the six cases are incapable of disposition in a single proceeding because there are 21 plaintiffs and 81 defendants. (Response at 17, 19). While defendant is wrong for the reasons explained below, the fact that there are so many parties with similar or identical claims cries out for judicial economy through reassignment. What is more, putting all of these cases under one judge would prevent inconsistent rulings on pending motions to dismiss (*Blassingame, Lyons,* and *Vale*), pending motions to bifurcate (*Archie* and *Harbin*), and

5

anticipated discovery motions (to disclose informant identity, to compel *Monell* discovery, to establish safeguards for the children's depositions) and motions for summary judgment.

The defendants do not contest that the third requirement—that reassignment of related cases would not cause substantial delay—is also met. LR 40.4(b)(3). The furthest along of these cases, *Archie* and *Harbin*, have barely moved into written discovery. (Plaintiff's Motion at 11). In *Blassingame, Lyons, and Vale*, the parties are awaiting rulings on defendants' motions to dismiss while in *Smith*, plaintiffs are in the process of amending the complaint after which defendants are expected to file motions to dismiss (as they have in every case). Courts have held that no substantial delay would result in these circumstances. *Murray v. America's Mortg. Banc, Inc.,* No 03 C 5811, 2004 U.S. Dist. Lexis 3148, at * (N.D. Ill. March 1, 2004) (case where discovery has just begun would not experience substantial delay if later related case were reassigned); *H.O.P.E.*, 2016 U.S. Dist. LEXIS 97713, at *20-21 (where parties are not near completion of discovery, unlikely that substantial delay would result from reassigning later related cases still in the pleading stage).

C. **Because the Cases Involve Fundamentally Similar Claims and Defenses, They Meet the Fourth Requirement of Local Rule 40.4(b)**

    1. *The Cases Involve Fundamentally Similar Claims and Defenses*

Defendants' understanding of this requirement is fatally misconceived. Cases are capable of disposition in the same proceeding if they involve "*prima facie* fundamentally similar claims and defenses." *Global Patent Holdings*, 2008 U.S. Dist. LEXIS 33296, at *12-13. In other words, Rule 40.4(b)(4) does not require that the related cases be exactly identical. *Pactiv Corp v. Multisorb Technologies, Inc.*, No 10 C 461, 2011 U.S. Dist. LEXIS 15991, at *13-14 (N.D. Ill. Feb. 15, 2011); *Helferich Patent Licensing, L.L.C. v. N.Y. Times Co.*, No. 1:10-cv-04387, 2012 U.S. Dist. LEXIS 56151, at *10 (N.D. Ill. April 19, 2012).

6

As explained in plaintiffs' motion, the central claim—the *Monell* claim—is identical in all six of these cases. (Ex. A-E, N). Indeed, none of these cases can be resolved without disposition of this central claim. *Fairbanks Capital Corp. v. Jenkins*, No. 02 C 3930, 2002 U.S. Dist. LEXIS 26297, at *11 (N.D. Ill. Nov. 25, 2002). Nevertheless and in the alternative, even without the *Monell* claim, the remaining claims are fundamentally similar. The *respondeat superior* and indemnification claims against Chicago are the same type of claim. (Ex. A, ¶¶ 276-281; Ex. B-E).

The claims against the officers are also fundamentally similar. In all five cases, the complaints allege § 1983 claims for unlawful searches due to invalid warrants and state law claims for Assault, IIED and Trespass. (Ex. A, ¶¶ 191-269; Ex. B-E, N). Five cases share false imprisonment claims under both section 1983 and state law. (Ex. A-C, E, N). And in each of these cases the facts are fundamentally similar: officers obtained a search warrant based on an uncorroborated tip from a John Doe informant and then forcibly entered the wrong home while holding children and their parents at gunpoint, verbally mistreating them and searching and damaging or destroying their personal property. (Ex. A-E, N).

The defenses raised in these cases are also the same. Chicago's answers in *Archie* and *Harbin* are virtually identical. (Ex. H, I). In both, Chicago claims immunity under the same provisions of the Tort Immunity Act, 745 ILCS 10/2-109 and 10/2-202. In both, Chicago cites the same cases for each of its defenses. None of this is surprising, as the city is represented by the same law firm, Klein, Thorpe, & Jenkins in both cases, as well as in *Blassingame*, *Lyons* and *Smith*. And, while Chicago has yet to provide answers in *Blassingame, Lyons, Vale, and Smith*, there is little reason to expect any change because it filed the same defenses to the same claims in

7

the *Mendez* and *Tate* cases. (Exhibits Q and R). In *Vale,* the City is represented by in-house corporation counsel.

In all six cases, the defenses raised by the defendant officers, all of whom are represented by Querrey & Harrow, are also the same. Indeed, the officers' answers in *Archie* and *Harbin* raise the same defenses in the *same words*. (Ex. J, K). Both answers raise the defenses of qualified immunity and immunity under the Tort Liability Act, and both cite the same cases. (Id.). As the same firm represents all officers in *all five* of these cases, there is little reason to expect the officers in *Blassingame, Lyons*, *Vale,* and *Smith* to file a different answer to the same claims, especially because it filed the same defenses to the same claims in the *Mendez* and *Tate* cases. (Exhibits S and T).

The fact that the defendants are represented by the same attorneys in all cases is yet another factor weighing in favor of reassignment. *Murray*, 2004 U.S. Dist. LEXIS 3148 at *7 (where same law firms represent the parties and will likely file identical briefs, judicial economy is promoted by reassignment). Defendants have already filed identical motions to bifurcate and highly similar motions to dismiss that make many of the same arguments (most recently in *Vale*), (Ex. G, M, O and P), arguments that the *Archie* and *Harbin* courts have mostly rejected. *Archie v. City of Chicago*, 2020 U.S. Dist. LEXIS 176221 (N. D. Ill. Sept. 25, 2020); *Harbin v. City of Chicago*, 2020 LEXIS 213712 (N. D. Ill. Nov. 16, 2020). Without reassignment, there is a real risk of divergent rulings and multiple appeals on the same factual and legal issues.

### 2. *That Some Additional Facts or Issues May Need To Be Determined as to Individual Plaintiffs and Defendants Does Not Prevent Resolution in the Same Proceeding*

The defendants make much of the factual differences in each search warrant incident. (Defendant's Motion at 1). Citing no authority anywhere in their brief, they claim that Rule 40.4(b)(4) requires that *all* of the claims in the cases can be disposed of in a single proceeding.

8

(Defendant's Motion at 6). On the contrary, Rule 40.4 does *not* require "proof that the cases can or should be consolidated." *Fairbanks,* U.S. Dist. LEXIS 26297, at *10-11; *Peery v. Chicago Housing Authority*, No 13-cv-8413, 2013 U.S. Dist. LEXIS 138589, at *6-7 (N.D. Ill. Sept. 26, 2013). Reassignment "does not inexorably lead to their consolidation for all purposes." *Fairbanks,* U.S. Dist. LEXIS 26297, at *10. It is not a requirement that all parts of all six cases are able to be tried together. Plaintiffs do not advocate a single trial for all claims as defendants misstate. (Response at 19). So long as the core issues are the same, the cases are *"susceptible"* to disposition in a single proceeding for purposes of Rule 40.4. *Peery*, 2013 U.S. Dist. LEXIS 138589, at 6-7.

For example, in *Anderson v. Cornejo*, a class of African-American women sued US Customs Service employees for violating their 4th Amendment rights to be free from unreasonable searches. *Anderson*, 199 F.R.D. 228. According to the plaintiffs, the Customs Service had performed unreasonable and non-routine strip-searches of African-American women at Chicago O'Hare International Airport. *Id.* at *238. As it turned out, shortly before the *Anderson* case was filed, another woman filed a similar suit against the Customs Service employees. *Id.* at *262. Even though the claims in *Anderson* did not completely overlap with the claims in the related case, the court ruled that "common issues of law and fact … can be resolved in a single proceeding even if some additional facts also have to be determined as to each individual plaintiff." *Id.* The court in *Helferich* reached a similar conclusion, holding that one party having more claims than another does not prevent their claims from being resolved in the same proceeding. *Helferich,* 2012 U.S. Dist. LEXIS 56151, at *10.

In this instance, while it is certainly true that there are factual differences among the search warrant incidents in the six cases, these differences do not prevent the cases from being

9

resolved in a single proceeding for purposes of Rule 40.4. That the facts in *Archie* involve not one but three botched search warrants means that some additional facts may need to be determined as to the *Archie* plaintiffs, not that *Archie* cannot be disposed of with the other cases. That the *Archie* plaintiffs have a couple of claims they do not share with the other plaintiffs—battery and search without consent in one raid—does not mean the case is not susceptible of being resolved in the same proceeding with other cases.

The same holds true for differences in the six *Monell* claims, to the extent there are any significant differences. For example, defendants point out that the *Monell* periods differ across the cases and argue that this prevents disposition in a single proceeding. (Defendant's Motion at 1-5). They argue that different policies and training curriculums existed at different times during the varying *Monell* periods. (Defendant's Motion at 1-5). This argument fails for four reasons. First, the *Monell* periods overlap significantly. (Plaintiff's Motion at 5). For *Archie* and *Harbin*, the period is from 2013-2019. For *Lyons* and *Vale*, it is from 2014-2020. For *Blassingame*, it is from 2009-2015, and for *Smith* it is 2011-2017. So, four of the six cases completely overlap for five years; the other two also overlap with each other for four years and with the first four cases for two years. Second, "the *Monell* period" that plaintiffs allege in each case is of course a somewhat arbitrary and flexible device chosen by plaintiffs to manage *Monell* discovery. There is no legal rule committing the parties to a six-year *Monell* period in each case; it could be shortened or lengthened. In fact, in each case plaintiffs' allegation is that the City had the alleged policies "*for more than* six years preceding the incident." (Ex. A-E, N). If the cases are reassigned such that *Monell* discovery is conducted in all cases simultaneously, then there is nothing preventing plaintiffs or the parties from achieving efficiency through devising a single "super-*Monell* period" ranging from roughly 2011-2020. Third, the fact that there may have been

10

minor differences training curriculums in 2020, at the tail end of the later *Monell* periods, means only that there are minimal additional facts to be determined in a couple of cases, namely *Lyons* and *Vale*.[2] This does not prevent disposition in a single proceeding. Finally, reassigning all of these cases to the same judge would make coordinating discovery much easier and more efficient. In fact, defendants *do not oppose* coordinated discovery on the common *Monell* claim in the six cases. (Response at 5; Ex. L). Given that the *Monell* claims are the same, it is also true that the scope of relevant documents, the document custodians, and the 30(b)(1) and (6) *Monell*-related witnesses will be the same in each case. Reassignment would allow the discovery process to be streamlined under one judge, who would rule on the inevitable *Monell* discovery disputes for all six cases. And instead of subjecting the City and each *Monell* witness to six different depositions, there would be only one.

Furthermore, the core claims are the same across the cases. Brought by the children in each case, the *Monell* claims, which are the most complex, are identical. The defendants admit as much in their motion for a coordinated pretrial proceeding. (Ex. L, ¶¶ 8-13). The same issues will arise for each *Monell* claim: did Chicago officers have a practice of using excessive force against children? Did the City effectively investigate and discipline officers in such incidents? Did CPD ever change its policies and training in response to incidents of excessive force against children? Were its policymaking officials aware of a pattern of excessive force against children? Reassignment would allow one judge to rule on each of these factual and legal issues only once and would prevent inconsistent rulings.

---

[2] Defendants admit *Vale* and *Lyons* are related. (Response at 4-5, 17, 18).

Similarly, the core claims against the defendant officers—invalid search under an invalid warrant and unreasonable manner of entry and search—will require the Court to address the same issues in each case: is the uncorroborated information from an informant sufficient for probable cause? Is pointing a gun at a child reasonable under the Fourth Amendment? Is such conduct willful and wanton under the Tort Immunity Act? Do officers who execute an invalid search warrant commit a trespass? Reassignment would allow one judge to rule on each of these legal issues only once and would prevent inconsistent rulings.

### 3. Any Concern That the *Monell* Claims Will Be Bifurcated Is Unfounded

Although defendants do not raise it, a theoretical argument potentially preventing the six cases from being found to be related and/or from being susceptible to being disposed of in a single proceeding is the possibility that one or more of the *Monell* claims could be stayed and/or bifurcated. This concern is unfounded. In two other cases with identical *Monell* claims, courts recently denied the same standard motions to bifurcate that the City filed in *Archie* and *Harbin* (and that the City would file in the four cases because it files it in every *Monell* case). *Tate v. City of Chicago*, 2019 U.S. Dist. LEXIS 84272 (N.D. Ill. May 20, 2019); *Mendez v. City of Chi.*, 2020 U.S. Dist. LEXIS 52418 (N.D. Ill. March 26, 2020). A court will not grant a motion to stay and bifurcate a *Monell* claim unless the moving party can show that 1) bifurcation is necessary to prevent prejudice to a party or ensure judicial economy; and 2) the non-moving party will not be unfairly prejudiced. *Tate*, 2019 U.S. Dist. LEXIS 84272, at *9-18. In *Tate*, the plaintiffs sued Chicago and several police officers under virtually all of the same claims advanced here. The minor plaintiffs alleged *Monell* liability against Chicago for its "*de facto* policy and practice of not avoiding unnecessary uses of force against children." *Tate*, 2019 U.S. Dist. LEXIS 84272, at *8-9. Against the officers, the plaintiffs alleged claims "including unlawful search, false arrest,

12

assault, intentional or negligent infliction of emotional distress, and trespass." *Id. Mendez* involved similar claims. *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *4-5. In both cases, the defendants moved to bifurcate and stay the *Monell* claim, arguing that failure to do so would allow a jury to impute evidence admitted against the city to the officers and *vice versa*. *Tate*, 2019 U.S. Dist. LEXIS 84272, at *8-9; *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *15-16.

The *Tate* court stressed that bifurcation of the *Monell* claim was not necessary to prevent prejudice to the defendants because limiting instructions would suffice. *Tate*, 2019 U.S. Dist. LEXIS 84272, at *8-9. The *Mendez* court agreed. *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *16. The defendants in the present cases can stave off prejudice in the same way - through motions *in limine* and limiting instructions. Bifurcation is simply not necessary.[3]

In *Tate* and *Mendez*, defendants also unsuccessfully argued that bifurcation would preserve judicial economy. There, the city claimed that litigating the *Monell* claims would be unnecessary if the claims against the individual officers failed. *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *8-9; *Tate,* 2019 U.S. Dist. LEXIS 84272, at *11-14. The rationale behind this argument is to prevent inconsistent verdicts. That is, if the city is held liable for excessive force even though its officers are not, this would create an impermissible, inconsistent verdict. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2009). Neither the *Tate* nor the *Mendez* court found this argument persuasive because in both cases, even if the officers were not found liable for any of the claims against them, the city could still be found liable without contradicting the verdicts for the officers. *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *9-13; *Tate,* 2019 U.S.

---

[3] This point also addresses the defendants' claim that reassignment would result in unfair prejudice to "the parties," to the extent that this argument by defendants makes any sense at all, since they do not ever identify any specific, unfair prejudice to them. (Response at 18-19). Plaintiffs do not see any for themselves or defendants. In any event, prejudice is not the standard here. Rule 40.4 is purely procedural.

13

Dist. LEXIS 84272, at *13-14. This is because the complaints in both *Tate* and *Mendez* were structured "in a way that makes the *Monell* claim independent from any finding of liability on the claims against Defendant Officers." *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *11.

Crucially, here, too, all complaints are structured in a way that makes the *Monell* claim independent from the claims against the officers. (Ex. A – E, N). In fact, the complaints are structured in *exactly* the same way as the complaints in *Tate* and *Mendez*. (Id.). The *Monell* claim of excessive force—the same claim in *Tate* and *Mendez*—is independent of the claims against the officers; the children do not have a separate § 1983 claim against the officers for excessive force. (Id.). Thus, the argument that bifurcation will promote judicial economy in *Archie, Harbin, Blassingame, Vale, Lyons* and/or *Smith* fails. On the contrary, bifurcating *Monell* claims would lead to *less* judicial economy because it would simply postpone *Monell* discovery and, in any event, would result in unnecessary discovery disputes concerning *Monell* versus non-*Monell* discovery. *Tate,* 2019 U.S. Dist. LEXIS 84272, at *15. This problem would be exacerbated when, as here, "there is an overlap in the witnesses, experts, and evidence that would be involved in each phase of the litigation." *Id*.

Finally, in both *Tate* and *Mendez* the courts found that bifurcation would unfairly prejudice *the plaintiffs*. *Mendez*, 2020 U.S. Dist. LEXIS 52418, at *15-18; *Tate,* 2019 U.S. Dist. LEXIS 84272, at *16-18. The *Tate* and *Mendez* children had an interest in police reform behind their *Monell* claims. They wanted a judgment against Chicago because it could deter similar misconduct. *Id.* Bifurcation would have been a *de facto* dismissal of the children's *Monell* claim and would have prevented them from pursuing reform. *Mendez*, 2020 U.S. Dist. LEXIS 52418 at *17. The plaintiffs in *Archie, Blassingame, Harbin, Lyons, Vale* and *Smith* have the same interest

14

in institutional reform. Bifurcating their *Monell* claims would unfairly prejudice them by preventing them from pursuing the claim that is of most value to them.

These cases are close siblings of *Mendez* and *Tate*. As in those cases, none of the requirements for bifurcation are satisfied by any of the six cases here. Therefore, it is unlikely that any court would bifurcate and stay the *Monell* claim in these cases. Because of this, there is no reason these cases are not related and/or could not be resolved in a single proceeding.

## IV.  CONCLUSION

For at least the reasons stated above, the plaintiffs respectfully request that this Court reassign *Blassingame*, *Harbin, Lyons*, *Vale* and *Smith* to its Calendar.

Respectfully submitted,

s/Al Hofeld, Jr.
Al Hofeld, Jr.

Samuel Kennedy
Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com

## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

I, Al Hofeld, Jr., an attorney for plaintiffs, hereby certify that on March 17, 2021, filing and service of the foregoing ***Plaintiffs' Reply in Support of Their Motion to Reassign Related Cases*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 and the Federal Rules of Civil Procedure as to service on any party who is not a Filing User or represented by a Filing User.

15

                                                        <u>s/Al Hofeld, Jr.</u>
                                                       Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
30 N. LaSalle Street, Suite #3120
Chicago, Illinois 60602
(773) 241-5844
Fax - 312-372-1766
al@alhofeldlaw.com